**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| **ADONIS M. BULLOCK,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL NO. 3:08CV371** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Adonis M. Bullock, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for Social Security Disability Benefits (DIB). The Commissioner's final decision is based on a finding by an Administrative Law Judge (ALJ) that Plaintiff was not disabled as defined by the Social Security Act (the Act) and applicable regulations.

For the reasons discussed below, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket entry no. 8) and motion to remand (docket entry no. 9) be

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to the extent necessary to properly analyze the case.

DENIED; that Defendant's motion for summary judgment (docket entry no. 10) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed for DIB on September 2, 2004, claiming disability due to post-traumatic arthritis in his right knee, right ankle and left wrist, a fractured navicula in his left wrist, and a ruptured long head biceps tendon . (R. at 60-62, 106-107.)  Initially, Plaintiff alleged that the disability's onset date was June 4, 2004.  (R. at 60.)  This date was amended to July 8, 2005 to coincide with Mr. Bullock's fiftieth birthday. (R. at 849.)    The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 28-30, 47-49.)  Plaintiff requested a hearing and on April 18, 2006, accompanied by counsel, he testified before an ALJ. (R. at 846-97.)  On May 19, 2006 the ALJ denied Plaintiff's application, finding that he was not disabled under the Act because he could perform his past relevant work as a telephone operator or a general clerk.  (R. at 16-22.)  The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.  (R. at 6-8.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503.  Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270

F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).³ 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation

---

³ SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

### IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. at 18.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of right knee degenerative joint disease and osteoarthritis, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 18-19.) The ALJ next determined that Plaintiff had the RFC to "lift/carry 20 pounds; stand/walk for six hours of an eight-hour workday; and sit for six hours of an eight-hour workday." (R. at 19.) Additionally, the ALJ found that the Plaintiff had no significant nonexertional limitations. (R. at 19.)

The ALJ then determined at step four of the analysis that Plaintiff could perform his past relevant work as a telephone operator or general clerk because that work "does not require the performance of work-related activities precluded by [his] residual functional capacity." (R. at 21.) Because the ALJ determined that Plaintiff was capable of performing his past relevant work, it was unnecessary to pursue the analysis to step five in which the Commissioner would have had the burden to show that, considering the claimant's age, education, work experience, and RFC, the claimant was capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits. (R. at 22.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.; Pl.'s Mot. to Remand.) In support of his position, Plaintiff argues that: (1) there is no informed medical opinion to support the ALJ's disability determination; (2) the ALJ failed to properly adjudicate Plaintiff's obesity and learning disability claims; and (3) that substantial evidence does not support the ALJ's conclusion that Plaintiff was not disabled under the Act where the ALJ improperly discounted Plaintiff's credibility. (Pl.'s Mem. in Supp. of Mot. for Summ. J. "Pl.'s Mem." at 6-9.) Defendant argues that the Commissioner's final decision is supported by substantial evidence and should therefore be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof "Def.'s Mem." at 18.)

**1.      Plaintiff contends that there is no informed medical opinion which supports the ALJ's disability determination.**

Plaintiff contends that there was no informed medical opinion which supported the ALJ's determination the Plaintiff was capable of performing light work. (Pl.'s Mem. at 6-7.) Specifically, Plaintiff argues that the ALJ gave controlling weight to the opinions of the non-examining state agency physicians as opposed to Plaintiff's treating physicians' opinions. (Pl.'s Mem. at 6.) Plaintiff argues that such reliance was improper as Plaintiff's physicians' opinions are well supported by medically acceptable diagnostic techniques and are consistent with substantial evidence in the record. (Pl.'s Mem. at 6.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence

resulting from consultative examinations or medical expert evaluations that have been conducted. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physicians, consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Plaintiff presented the ALJ with two functional assessment forms, completed by two of his treating physicians. The first assessment was conducted by a Dr. Brickhouse, who opined that, based on Plaintiff's severe degenerative arthritis in his right knee, he could only lift or carry ten pounds on a frequent basis, and he could stand/walk less than two hours and sit about four hours in an eight hour day. (R. at 738.) Additionally, Dr. Brickhouse opined that Plaintiff would need to avoid extreme temperatures of heat and cold, as well as wetness and humidity, in any of his future work environments, and that he would likely be absent from work about three


times a month due to his impairment(s). (R. at 740.) The second assessment was from a Dr. Dolbeare, who concluded that Plaintiff was capable of lifting and carrying 20 pounds occasionally and ten pounds frequently, that he could stand and walk approximately four hours, and had no sitting limitations in an eight hour day. (R. at 741-42.) Dr. Dolbeare also concluded that he did not believe that Plaintiff would have any environmental restrictions, and that he would never need to be absent from work due to the degenerative joint disease in Plaintiff's right knee. (R. at 743.)

In addition to the functional assessments provided by Dr. Brickhouse and Dr. Dolbeare, the record also contains an RFC Assessment completed by a physician at the request of the SSA. (R. at 682-87.) The physician conducted a review of Plaintiff's medical records and explained that Plaintiff's records did not indicate any permanent functional limitations due to Plaintiff's impairments, but that they only established that Plaintiff's treating physicians recommended temporary reprieve from his work obligations while recovering from various knee procedures. (R. at 686.) Additionally, the consultant noted that Plaintiff's most recent x-rays demonstrated severe degenerative changes with moderate effusion of the right knee, but that there was no medial or lateral instability. (R. at 687.) After considering all of Plaintiff's medical records, the medical consultant opined that Plaintiff Could occasionally lift/carry twenty pounds and frequently life/carry ten pounds. (R. at 682.) Finally, he determined that Plaintiff would be able to walk six hours as well as sit six hours in an eight hour work day, and that Plaintiff would have no environmental limitations on his activities. (R. at 682, 684.)

The ALJ analyzed the assessments of both the treating physicians; however, after comparing their opinions and recommendations to Plaintiff's medical records and the opinions of the consultive state examiner, he gave significant, but not controlling weight, to the state agency

consultants and significant weight to Dr. Dolbeare's assessment. (R. at 20-21.)  Specifically, the ALJ gave more weight to Dr. Dolbeare's opinion, as opposed to Dr. Brickhouse's assessment, because he found Dr. Dolbeare's report "to be more persuasive as his opinions [were] more consistent with the preponderance of the medical evidence." (R .at 21.)  The ALJ determined that there was nothing in Plaintiff's medical records indicating that he would have any difficulty sitting for a prolonged period of time, and that Plaintiff was able to ambulate effectively with "no severe gait abnormalities or neurological deficits." (R. at 21.)  Accordingly, the ALJ concluded that Dr. Brickhouse's opinions were inconsistent with the objective medical evidence and with the reports of Dr. Dolbeare and the non-examining state physicians, justifying giving Dr. Brickhouse's opinion less than controlling weight. (R. at 20-21.)

     A review of the ALJ's analysis demonstrates that his conclusions were based on appropriate medical evidence, and that substantial evidence supports the weight assigned to each of the physicians' assessments.  Plaintiff claims that the ALJ's opinion had no medical foundation, and that he improperly discounted Dr. Brickhouse's assessment.  However, as explained in the ALJ's opinion, his conclusions were based on the assessment by Plaintiff's treating physician, Dr. Dolbeare, and the assessment of the state medical examiner, as those medical opinions were most consistent with Plaintiff's medical records.  The ALJ adopted a majority of Dr. Dolbeare's medical assessment, concluding that Plaintiff was able to life/carry twenty pounds and that he could sit six hours in an eight hour day. (R. at 20-21.)  The only deviation from Dr. Dolbeare's assessment in the ALJ's findings was the ALJ's determination that Plaintiff could walk six hours in an eight hour day, as compared to Dr. Dolbeare's assessment that Plaintiff could only walk four hours a day. (R. at 21.)  As Plaintiff's medical records were inconsistent, the ALJ had the authority to accept the medical opinions that most

closely aligned with Plaintiff's medical records, and upon a review of the relevant medical records and the description of Plaintiff's daily activities, as well as the opinion of the state consultant, the ALJ determined the Plaintiff could, in fact, walk six hours in an eight hour day. (R. at 20-21.)

Less weight was given to Dr. Brickhouse's opinion because a review of Plaintiff's medical records did not demonstrate any basis for such stringent and permanent restrictions on Plaintiff's work capabilities as described by Dr. Brickhouse. (R. at 21.) A review of the record supports this conclusion. For example, in October of 2004, after one of his knee surgeries, Plaintiff requested that one of his treating physicians, Dr. Jay Nogi, complete forms for his disability claim. (R. at 582.) However, Dr. Nogi explained to Plaintiff that his only impairment was degenerative joint disease of his knee, and that while he may be eligible for some form of work modification, Dr. Nogi was "reluctant to sign any form that [made] him completely disabled on the basis of unilateral knee arthritis." (R. at 582.) Indeed, none of Plaintiff's doctors placed such restrictive conditions on Plaintiff's ability to work as did Dr. Brickhouse, except on the limited occasions that Plaintiff was recovering from his knee surgery. Even after his many knee surgeries, none of Plaintiff's doctors ever placed any permanent restrictions on his ability to work, particularly his ability to sit; nor did they recommend any environmental limitations as those described by Dr. Brickhouse.

Having reviewed the ALJ's analysis and the record, it is clear that the ALJ's assessment of the medical opinions and records was supported by substantial evidence in the record, and that his conclusions were based on appropriate medical evidence. As such, Plaintiff's claim that the ALJ's opinion is not supported by informed medical opinion is without merit.

**2. Plaintiff contends that the ALJ failed to properly adjudicate his obesity disability claim and his learning disability claim.**

The Plaintiff also asserts that the ALJ failed to adjudicate all of his claims of disabling impairments.(Pl.'s Mem. at 7.) Specifically, Plaintiff claims that the ALJ did not consider that he was entitled to benefits due to his claims of obesity, and that he suffers from a learning impairment. (Pl.'s Mem. at 7-8.)

A review of the record indicates that the ALJ did not err by failing to review Plaintiff's obesity and learning disability claims because the Plaintiff never alleged that such impairments were the cause or an aggravation of his alleged disability. An ALJ has the duty to fully develop a record and to consider a claimant's medical history and alleged sources of impairment; however, the ALJ is not required to assume or surmise that a circumstance or condition exists without the Plaintiff first alleging that the condition or impairment is a source or cause of an alleged disability. To determine otherwise would require an ALJ to consider every detail of a claimant's medical record without a particular issue bing raised, and draw conclusions about potential impairments that may not be relevant to the pending disability claim. Such an analysis would overly burden the ALJ, and render the system ineffective. While the ALJ has an affirmative duty to inquire into a Plaintiff's condition and impairments, it is the claimant's responsibility to at least indicate which impairments allegedly cause or contribute to their alleged disability.

Plaintiff's initial disability reports indicate that when Plaintiff was asked what impairments he had, he responded that he suffered from "knee injury, post-traumatic arthritis, right-knee, post-traumatic arthritis, left wrist with fracture of navicula, post-traumatic arthritis, right ankle, right shoulder condition with rupture long head of biceps tendon." (R. at 106-07.)

Moreover, in the many disability and function reports that Plaintiff submitted to the Social Security Administration, Plaintiff never stated that he had an impairment due to his weight or a learning disability; nor did he even indicate that his alleged impairments were aggravated by such conditions. (See e.g., R. at 98 - 105, 106-07, 141-48, 149-55, 164-68.)

Plaintiff argues that the Agency failed to adjudicate his claim of obesity, even though his weight was clearly reported to the agency on two occasions, first in 2005 when he reported his weight was 235 pounds on his Disability Report, and again in 2007 when his medical records indicate that his weight had increased to 252 pounds. (Pl.'s Mem. at 7.) The Court recognizes that Plaintiff's weights are reflected in the Record; however, they were not presented to the Social Security Administration in a way which indicated that Plaintiff's weight was an impairment or an aggravating condition of one of his alleged impairments. Indeed, the first indication at all of Plaintiff's weight was as stated on a disability form, and was it not listed as an impairment, but was simply noted in response to the question of how much he then weighed. (R. at 106.) The second notice of Plaintiff's weight was presented to the Social Security Administration after the Plaintiff's hearing before the ALJ, and it consisted simply of a listing of Plaintiff's current weight during one of his doctor's appointments for which he was being treated for symptoms unrelated to his weight. (R. at 786-88.) Moreover, the Plaintiff failed to raise his weight as a factor during the hearing before the ALJ in which both he and his counsel were given more than sufficient opportunity to supplement the record. (R. at 848-97.) Accordingly, the ALJ did not err in failing to adjudicate Plaintiff's obesity claim as such a claim was never raised by the Plaintiff as an impairment or contributing factor to his alleged disability claim.

Plaintiff also asserts that the ALJ failed to properly adjudicate Plaintiff's claim of suffering from a learning disability. (Pl.'s Mem. at 7-8.) Specifically, Plaintiff asserts that he

testified at his hearing that he had difficulty reading, and that the Commissioner was required to give credence to these statements when making his disability determination. (Pl.'s Mem. at 8.) As already noted, Plaintiff did not allege that he suffered from a learning disability or impairment in any of the forms that he submitted to the Social Security Administration prior to his hearing before the ALJ. ( R. at 98 - 105, 106-07, 141-48, 149-55, 164-68.) Indeed, to the contrary, he stated on his Disability Report that he could read, write and understand the English language. (R. at 106.) However, at the hearing before the ALJ, the Plaintiff stated that he struggled with reading comprehension and understanding some of the announcements he used to receive while he was a telephone operator at the Veteran's Administration. (R. at 884-88.) He also stated that although he had completed high school and some college, he had not performed well in his classes, and did not have a full range of reading comprehension. (R. at 886.)

Nevertheless, when Plaintiff testified as to his reading ability at the hearing before the ALJ, his counsel stated that he had not "even consider[ed] the reading issue." (R. at 886.) He then questioned Plaintiff as to his ability to read and respond to the forms and notices that he had received from the SSA and from his attorney. (R. at 886-88.) Plaintiff stated in response that he had been able to read the Notice of Hearing he had received and that he had known that he was supposed to appear at the hearing. (R. at 886-87.) He also stated that he had understood, answered and filled out, in his own handwriting, the Daily Activities Questionnaire that had been submitted to the SSA in support of his claim. (R. at 888.) Thus, although Plaintiff stated that he struggled with his reading and writing abilities, he presented no substantive evidence supporting the claim, and did not demonstrate, particularly through the questioning of his attorney, that any impairment existed. As such, the Plaintiff did not present a claim for which the ALJ should or could have adjudicated, and therefore, this Court recommends that the ALJ's opinion not be

reversed and remanded for failure to adjudicate Plaintiff's claim of obesity or any claim resulting from or compounded by a learning impairment.[6]

**3.      Plaintiff claims that substantial evidence does not support the ALJ's disability determination because the ALJ improperly discounted Plaintiff's credibility.**

Finally, Plaintiff asserts that the ALJ erred by failing to give proper weight to his subjective complaints of pain. (Pl.'s Mem. at 8-9.) Specifically, Plaintiff claims that the ALJ failed to make explicit findings as to whether or not the impairment could reasonably be expected to produce the pain and symptoms that Plaintiff alleged. (Pl.'s Mem. at 9.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part

---

[6] The Court does note, in light of its current findings, that if Plaintiff has substantive evidence of disability due to a learning impairment or his weight, he may have such claims adjudicated by properly raising them in a new claim.

15

of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

At the hearing before the ALJ, in support of his subjective complaints of pain and limitations as a result of his impairments, Plaintiff testified that he experienced fairly constant

knee pain during which he sometimes suffers shooting pain in his knee, while at other times his knee "locks up" on him. (R. at 870.) Plaintiff also stated that he experiences pain in his right shoulder and wrist, his left writs, his lower back and both of his ankles, but that such pain was not as frequent as his right knee pain. (R. at 869-70.) Plaintiff was asked to describe his physical limitations due to his impairments, and he stated that he could walk about two blocks and stand for approximately ten minutes before becoming stiff. (R. at 866.) Plaintiff also indicated that the pain he experienced would often affect his ability to concentrate, and that he struggled with completing paperwork. (R. at 869, 881, 884.)

  It is clear from the ALJ's opinion that he performed a thorough analysis of both the subjective and objective medical evidence presented to him in making his determinations as to Plaintiff's credibility and RFC. The ALJ found that the "claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (R. at 19.) Specifically, the ALJ concluded that Plaintiff's medical records and his description of his daily activities were inconsistent with the amount of pain Plaintiff allegedly experienced. (R. at 20.) For example, Plaintiff indicated that he struggled with pain throughout his body, but particularly in his right knee. (R. at 870.) However, as the ALJ noted, Plaintiff also testified that he was able to look after and care for his disabled daughter, was able to drive himself places, and that he was able to attend sporting events. (R. at 20, 861, 864, 865.) Plaintiff also testified that his doctors encouraged him to exercise his leg and that he was only taking pain medication approximately once a month. (R. at 880, 865.) Such activities contravene Plaintiff's assertions of disabling pain.

The ALJ conducted a thorough review of Plaintiff's medical records and subjective complaints of pain, but found that Plaintiff's daily activities and medical record did not correlate to the pain Plaintiff testified that he was experiencing. The ALJ performed the required Craig analysis and provided an explicit rationale to support his conclusions. The ALJ found that the Plaintiff had the severe impairments of right knee degenerative joint disease and osteoarthritis, but that these impairments, either individually or in combination, did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-19.) The ALJ accordingly found that while such impairments could reasonably be expected to produce the alleged symptoms, the Plaintiff's statements regarding the intensity, duration, and limiting effects of the alleged symptoms were not entirely credible. (R. at 19.) It is clear that the evidence in the record supports the ALJ's determination that Plaintiff's testimony regarding the extent and limiting effects of his pain was less then credible. Accordingly, the Court recommends a finding that the ALJ's conclusions regarding Plaintiff's credibility and RFC determinations are based on substantial evidence in the record and should not, therefore, be overturned.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket entry no. 8) and motion to remand (docket entry no. 9) be DENIED; that Defendant's motion for summary judgment (docket entry no. 10) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                            /s/
                                   DENNIS W. DOHNAL
                                   UNITED STATES MAGISTRATE JUDGE

Date: March 27, 2009
Richmond, Virginia